UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>MILFORD STONE COMPANY, INC.,<br><br>Defendant. | Case No. 19-cv-12449 |

**CONSENT DECREE**

WHEREAS, Milford Stone Company, Inc. ("Milford Stone") operates a sand and gravel mining and processing facility at 429 East Main Street, Milford, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Milford Stone has illegally discharged sediment-laden industrial material ("Industrial Material") and polluted stormwater from the Facility into wetlands and waterways in and around the Facility ("Resource Areas"), in violation of the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations;

WHEREAS, on November 6, 2018, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Milford Stone to the Administrator of the United States Environmental Protection Agency ("EPA"); the

Administrator of EPA Region I; the Massachusetts Department of Environmental Protection; and to Milford Stone, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. § 1365;

WHEREAS, the Attorney General has today filed a Complaint against Milford Stone in the United States District Court, District of Massachusetts;

WHEREAS, following receipt of the November 6, 2018 Notice, Milford Stone has taken certain steps, including retaining McClure Engineering, Inc., a professional engineering firm, and EcoTec, Inc., an environmental consulting firm, to investigate the alleged violations and to develop and implement a plan to stabilize, protect, and restore the Resource Areas impacted by Milford Stone's activities, and to properly control and monitor stormwater pollutant discharges from the Facility;

WHEREAS, Milford Stone anticipates that these steps, together with implementation of the measures set forth herein and in Milford Stone's Stormwater Pollution Prevention Plan ("SWPPP") for the Facility, will enable it to comply with the requirements of the Federal Clean Water Act, the Massachusetts Wetlands Protection Act, and the Massachusetts Clean Waters Act;

WHEREAS, the Attorney General's Office and Milford Stone have reached an agreement to resolve the litigation;

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), it is ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States) and 28 U.S.C. § 1367 (supplemental jurisdiction over related state claims).

2. Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

3. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## III. EFFECTIVE DATE

4. The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## II. PARTIES BOUND

5. This Consent Decree shall constitute a binding agreement between the Parties, and Milford Stone consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either Party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Milford Stone agree otherwise in writing within fourteen (14) days of the Court's decision.

6. Milford Stone shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Milford Stone shall also provide a copy of this Consent Decree to any contractor retained to perform work required under this Consent Decree, and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

7. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Milford Stone or its managers, officers, directors, agents, and/or servants of any obligation under this Consent Decree.

8. For three years following the Effective Date, or until Milford Stone has obtained a Certificate of Compliance in accordance with Paragraph 19(d), whichever date is later (the "Monitoring Period"), Milford Stone shall provide a copy of this Consent Decree to any prospective transferee or new manager or operator no fewer than thirty (30) days prior to any change or transfer of ownership, management, or operation of the Facility. Milford Stone shall simultaneously provide written notice of the prospective change or transfer in ownership, management, or operation of the Facility, together with a copy of the proposed written change or transfer agreement, to the Attorney General's Office in accordance with Section XI (Notice) of this Consent Decree. Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

9. Milford Stone shall not violate this Consent Decree, and Milford Stone shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Milford

Stone shall not raise as a defense the failure by any of its managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

10. In addition to any relief specifically provided in this Consent Decree, Milford Stone understands and agrees that violations of this Consent Decree may be punishable by contempt.

## IV. PAYMENTS

11. Within fifteen (15) days of the Effective Date, Milford Stone shall pay to the Commonwealth a civil penalty in the sum of twenty-five thousand dollars ($25,000). The payment of the civil penalty shall be made by certified, treasurer's, or bank check payable to the "Commonwealth of Massachusetts" and delivered to the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, Boston, Massachusetts, 02108, to the attention of Nora J. Chorover, Special Assistant Attorney General. The check shall include on its face the following information: Commonwealth v. Milford Stone Company, Inc. - Civil Penalty.

12. Within fifteen (15) days of the Effective Date, Milford Stone shall pay to Adam Brodsky, as escrow agent ("Escrow Agent") $25,000 to help fund certain activities required by paragraph 19 of this Consent Decree ("Escrow Payment"). The Escrow Payment shall be managed and disbursed by the Escrow Agent in accordance with the Executed Escrow Agreement, which is attached hereto as Exhibit A and incorporated herein by reference. The Escrow Payment shall be made by certified check, treasurer's check, or bank check and sent to Adam J. Brodsky, Drohan Tocchio & Morgan, P.C., 175 Derby Street, Suite 30, Hingham, Massachusetts, 02043. Evidence of Milford Stone's submission of the Escrow Payment shall be provided by Milford Stone to the Commonwealth on the day that it is made. Nothing in this paragraph is meant to diminish Milford Stone's obligations under this Consent Decree, including but not limited to its obligation to incur

additional costs beyond the amount of the Escrow Payment that may be necessary to fully comply with paragraph 19.

13. Within fifteen (15) days of the Effective Date, Milford Stone shall make a payment of twenty-five thousand dollars ($25,000) to the Charles River Watershed Association (the "CWA Payment"). The CWA Payment shall be used by the Charles River Watershed Association to fund a project or projects in the vicinity of, but not at, the Facility, that is designed to improve or protect water quality in the Charles River Watershed. The CWA Payment shall be made by certified check, treasurer's check, or bank check and sent to Emily Norton, Executive Director, Charles River Watershed Association,10 Park Road, Weston, Massachusetts 02493. Evidence of Milford Stone's payment to the Charles River Watershed Association shall be provided by Milford Stone to the Commonwealth on the day that it is made.

14. Within 15 days of the Effective Date, Milford Stone shall reimburse the Attorney General's Office in the amount of $27,000 to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments shall be made by certified check payable to the Commonwealth of Massachusetts and sent to the Attorney General's Office in accordance with Section XI (Notice). The check shall include on its face the following information: Commonwealth v. Milford Stone Company, Inc. – Costs and Attorney Fees.

15. Within 15 days after the Effective Date, Milford Stone shall pay to the Attorney General's Office $15,000 to be used to reimburse the Attorney General's Office for reasonable fees and costs incurred to monitor Milford Stone's compliance with this Consent Decree during the Monitoring Period. Payments shall be made by certified check payable to the Commonwealth of Massachusetts and sent to the Attorney General's Office in accordance with Section XI (Notice).

The check shall include on its face the following information: Commonwealth v. Milford Stone - Monitoring. Nothing in this Paragraph or in this Consent Decree shall restrict the Attorney General's Office's right to seek additional compensation for fees or costs that it incurs to address Milford Stone's noncompliance with the terms of this Consent Decree.

## V. INJUNCTIVE RELIEF

16. Milford Stone agrees to operate the Facility in compliance with the applicable requirements of the United States Environmental Protection Agency's National Pollutant Discharge Elimination System ("NPDES") Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity, including any amendments thereto (the "Stormwater Permit"), and with the Federal Clean Water Act, the Massachusetts Wetlands Protection Act, the Massachusetts Clean Waters Act, and their respective implementing regulations.

17. Stabilization of Soils and Slopes. Milford Stone shall immediately undertake any and all practicable measures to provide short term stabilization of surficial soils, slopes, and stormwater at the Facility.

18. Movement and Storage of Industrial Material. As of the Effective Date, Milford Stone will not mobilize or store Industrial Material in a manner that results in Industrial Materials being placed in or migrating into any Resource Area, or in a manner that results in sedimentation or alteration of a Resource Area.

19. Restoration and/or Replication of Altered Resource Areas.

a. By December 1, 2019, Milford Stone will submit to the Milford Conservation Commission a copy of this Consent Decree and a Notice of Intent for the alteration or filling of Resource Areas at the Facility, including but not limited

to Milford Stone's prior unauthorized alterations or filling of Resource Areas. The Notice of Intent shall include each element required by the Massachusetts Wetlands Protection Act and its implementing regulations, including but not limited to all required plans and supporting documents as set forth in 310 C.M.R. § 10.05(4)(a) and the Massachusetts Department of Environmental Protection's ("MassDEP's") Form 3. A copy of the Notice of Intent and all supporting plans and documents shall be submitted concurrently to the Attorney General's Office.

b. No later than twelve months after the Milford Conservation Commission or MassDEP has issued an Order of Conditions for the Milford Stone's activities at the Facility (the "Order of Conditions"), all excavation, placement of soils, grading, and plantings required by the Order of Conditions shall be completed by Milford Stone.

c. No later than 24 months after the date of the Order of Conditions, any and all Resource Area restoration or replication required by the Order of Conditions shall be completed by Milford Stone and Milford Stone shall the provide Attorney General's Office with a report from a qualified wetlands professional certifying that the Resource Areas have been restored and/or replicated in accordance with the plans incorporated by the Order of Conditions.

d. Milford Stone will notify the Attorney General's Office pursuant to Section X (Notice) when it has received a Certificate of Compliance for the restoration and/or replication of Resource Areas, and will allow the Attorney General's

Office to enter the Milford Stone Facility in accordance with Section VI (Facility Access and Submission of Records) to inspect the implementation.

20. Industrial Stormwater

a. *Improved Pollutant Reduction Measures.* Milford Stone will direct and properly control stormwater at its Facility to minimize pollutants in stormwater discharges from the Facility. Specifically, Milford Stone will take the following actions by the following dates:

i. By May 30, 2020, Milford Stone will direct stormwater at the facility, but excluding stormwater that infiltrates into the ground, to a properly designed sediment basin or other appropriate stormwater best management practices ("BMPs"), prior to its discharge to any Resource Area.

ii. As of the Effective Date, Milford Stone will prevent unpermitted discharges to the Resource Areas.

b. *Improved Compliance Monitoring.* As of the Effective Date, Milford Stone will ensure representative sampling of stormwater discharged from the Facility by:

i. Monitoring its stormwater discharges in accordance with applicable provisions of Section 6 of the Stormwater Permit, and Appendix B, Section B-10 of the Stormwater Permit.

ii. Following the procedures set forth in EPA's Industrial Storm Water Monitoring and Sampling Guide (March 2009), or any applicable

updated EPA guidance or industrial stormwater monitoring and sampling.

iii. Performing quarterly monitoring during each annual quarter that this Consent Decree is in effect.

iv. Preparing photographs of the sampling taken for each of the first four quarters after the Effective Date and providing the Attorney General's Office with copies of such photographs in accordance with Section XI (Notice), below. The photographs shall include an accurate record of the time and date on which they were taken. Each photograph shall make clear and evident, through visual imagery

(a) the date and time on which it was taken,

(b) the location or locations at which it was taken,

(c) the persons present during the photograph,

(d) the location of the pipe or conduit being sampled from,

(e) the manner in which each sample is taken, and

(f) the sample or samples taken.

If the photographs are insufficient to verify items (a)-(f) above, then the Attorney General's Office will have the right to be present during or require the photographing of another representative sampling event in a subsequent calendar quarter of its choosing.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

21. During the Monitoring Period, Milford Stone shall permit the Attorney General's Office to visit the Facility during normal daylight business hours, provided that the Attorney

General's Office provide at least 48 hours of prior notice. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Stormwater Permit and may collect samples and take photos at the Facility.

22. During the Monitoring Period, Milford Stone shall provide the Attorney General's Office with the following documents, by emailing them to nora.chorover@state.ma.us:

a. Copies of all documents Milford Stone submits to EPA, the Commonwealth of Massachusetts, and/or the Town of Milford concerning Milford Stone's compliance with the Massachusetts Wetlands Protection Act at the Facility or concerning the Facility's stormwater discharges, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity.

b. All maintenance records for its stormwater pollution control systems. Maintenance records will be provided within five (5) business days of Milford Stone's receipt of a written request by the Attorney General's Office.

c. Timely written notice of any planned or completed changes to the company's stormwater control measures, with dates of anticipated or completed changes.

d. Current copies of the company's SWPPP within five (5) business days of a request by the Attorney General's Office.

e. Laboratory reports and analytical results of stormwater sampling performed by or for Milford Stone, within five (5) business days of receiving the reports.

f. Photographs of four quarterly monitoring events after the Effective Date prepared in accordance with Paragraph 17(b)(iv), above, at the same time that

the corresponding laboratory reports and analytical results for the samples are provided (see Paragraph 20(b)(iv), above). All Quarterly Visual Inspection Forms and Routine Facility Inspection Forms, including laboratory results for the samples, shall be submitted to the Attorney General's Office with the Annual Report required pursuant to the Stormwater Permit.

23. Any information provided by Milford Stone or acquired by the Attorney General's Office pursuant to this Consent Decree may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

24. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Milford Stone to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTEREST AND COLLECTIONS

25. If any payment required pursuant to this Consent Decree is late or not made, Milford Stone shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) pursuant to G.L. c. 231, § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorneys' fees.

## IX. EFFECT OF CONSENT DECREE

26. Upon compliance with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Milford Stone's liability for the specific legal claims alleged against it in the Complaint that arose prior to the entry of this Consent Decree, and (b) the Commonwealth shall release Milford Stone for liability for the specific legal claims alleged against Milford Stone in the Complaint that arose prior to the entry of this Consent Decree. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all of the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by this Consent Decree or otherwise.

27. Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Milford Stone or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Department or EPA relative to the Facility.

28. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Milford Stone is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Milford Stone's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Milford Stone's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

29. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## X. MISCELLANEOUS

30. Milford Stone understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the civil penalty and any other costs or sums that Milford Stone may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

31. Milford Stone shall pay all expenses, including reasonable attorneys' fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree.

32. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

33. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next Business Day.

34. Signatures of the Parties transmitted by scanning and email are binding.

## XI. NOTICES

35. Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Nora.chorover@mass.gov

For Milford Stone:

Adam J. Brodsky
Drohan, Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, MA 02043
abrodsky@dtm-law.com

or, to such other place or to the attention of such other individual as a Party may from time to time designate by written notice to the other Party to this Consent Decree.

## XII. INTEGRATION

36. Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between the Parties shall have no force and effect.

## XIII. MODIFICATION

37. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XIV. AUTHORITY OF SIGNATORY

38. The person signing this Consent Decree on behalf of Milford Stone acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Milford Stone's managers, directors, officers, and shareholders have consented to Milford Stone entering

into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Milford Stone to the terms of this Consent Decree.

## XV. RETENTION OF JURISDICTION

39. The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

40. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Dated: 12/3/19

[signature]

Office of the Attorney General

By: Nora Chorover

Dated: ______________

[signature]

Milford Stone Company, Inc.

By: Joseph Shay, President

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

[signature]

United States District Court

Dated: 2/3/20

# ESCROW AGREEMENT

**AGREEMENT** made this 19th day of November, 2019, by and between Milford Stone Company, Inc. ("Milford Stone") and the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office")(collectively "Parties"), and Adam J. Brodsky, of Drohan Tocchio & Morgan ("DTM"), as escrow agent ("Escrow Agent").

## Recitals

**WHEREAS**, the Commonwealth and Milford Stone have executed a Consent Decree concurrently with the execution of this Escrow Agreement regarding the Commonwealth's allegations that Milford Stone violated the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations in relation to Milford Stone's operations at the Facility.

**WHEREAS,** pursuant paragraph 12 of the Consent Decree, Milford Stone has agreed to place twenty-five thousand dollars ($25,000) in escrow to secure Milford Stone's restoration and/or replication of altered wetland resource areas under the Consent Decree (the "Escrow Account").

**WHEREAS**, this Escrow Agreement sets forth the procedures by which funds may be released from the Escrow Account in accordance with the conditions of paragraph 12 of the Consent Decree;

**NOW, THEREFORE,** the Parties agree as follows:

## I. Escrow Agent

1. The Parties designate Adam J. Brodsky, Esq., of Drohan Tocchio & Morgan, 175 Derby Street, Hingham, MA 02043, to be the Escrow Agent to hold, manage, and disburse the Escrow Account in accordance with the terms and conditions of the Consent Decree and of this Escrow Agreement.

## II. Establishment of Escrow Account and Accounting

2. Milford Stone shall deliver payments required under paragraph 12 of the Consent Decree (the "Escrow Payment") to the Escrow Agent in accordance with the terms and conditions of the Consent Decree.
3. Within three (3) days of receiving the Escrow Payment, the Escrow Agent shall open a non-interest-bearing account in a federally-insured, Massachusetts bank and shall deposit into it the full amount of such payment.
4. Within seven (7) days of opening the Escrow Account, the Escrow Agent shall notify the Parties of the name and address of the bank, the account number of the Escrow Account, the Escrow Account balance, and the date on which the Escrow Account was

opened. The Escrow Agent shall establish a checking account to facilitate disbursement of the Escrow Funds. The Escrow Agent shall keep possession of the bank statements and book(s) of the Escrow Account until such time as it is terminated in accordance with the terms of the Consent Decree and this Escrow Agreement, or until a successor Escrow Agent is appointed as provided herein.

5. The Escrow Account shall be opened with the signature of the Escrow Agent indicating that checks drawn against the account may be signed by the Escrow Agent and by no other person. Disbursements shall be made from the Escrow Account only in accordance with the terms of this Escrow Agreement.

6. The Parties shall have the right to inspect all books, bank statements, and records of the Escrow Agent relating to the Escrow Account at reasonable times upon request.

7. Any taxes, fees, charges, or other costs of administration of the Escrow Account shall be paid for by Milford Stone and shall not be paid out of the Escrow Funds. Milford Stone shall pay for the services of the Escrow Agent, and such payment for the services of the Escrow Agent shall not be paid out of the Escrow Funds.

## III. Disbursements from Escrow Account

8. *Payments to Milford Stone for Cost Reimbursement* - As Milford Stone and/or consultants or contractors retained by Milford Stone incur costs for the performance of the restoration and/or replication obligations pursuant to paragraph 19 of the Consent Decree, Milford Stone may submit periodically to the Attorney General's Office a written certification and request for authorization of disbursement of Escrow Account Funds. Any such certification and request shall be in the form of Attachment A hereto, which is incorporated herein, and shall include a certification of the paragraph 19 restoration and/or replication related action(s) completed with the date(s) and nature of the work or services performed, the amount(s) expended to complete such work, the person(s) to whom such money is owed, and shall enclose supporting document therewith. Only activities performed pursuant to paragraph 19 after the Effective Date shall be eligible for reimbursement from the Escrow Funds. The certification shall be signed by Joseph F. Shay, Jr., as President of Milford Stone. Immediately upon receipt of written authorization from the Attorney General's Office in the form of Attachment B hereto, which is incorporated herein, the Escrow Agent shall pay the amount(s) authorized by the Attorney General's Office from the Escrow Account to the party(ies) indicated in the authorization.

9. *Payment to Milford Stone of any Remaining Escrow Funds* – Should any amount of Escrow Funds remain after Milford Stone has complied with its restoration and/or replication obligations under paragraph 19 of the Consent Decree, then the remaining funds shall be disbursed as follows: Immediately upon receipt of written authorization from the Commonwealth in the form of Attachment C hereto, which is incorporated herein, the Escrow Agent shall pay to Milford Stone the remaining Escrow Funds.

10. Disbursements shall be made from the Escrow Account only in accordance with the terms of this Escrow Agreement.

## IV. <u>Termination of Escrow Account</u>

11. When any and all remaining Escrow Funds have been disbursed and the Escrow Account is terminated, the Escrow Agent shall provide a final accounting of all

transactions hereunder to the Parties.

## V. Responsibilities of Escrow Agent

12. The Escrow Agent's sole obligation hereunder shall be to perform the duties set forth in this Escrow Agreement, which duties are intended to be purely ministerial in nature. The Escrow Agent shall not be liable to either Party if the Escrow Agent acts in accordance with this Escrow Agreement. The Escrow Agent shall be entitled to assume the truth and correctness of any notice, signature, or document(s) presented to him. The Escrow Agent shall not be responsible for any act or failure to act on its part as Escrow Agent except it shall be responsible in the cases of its own bad faith or gross negligence.

## VI. Resignation, Removal, or Successor Escrow Agent

13. The Escrow Agent may resign from serving as an escrow agent pursuant to this Escrow Agreement without prejudice to his rights, privileges, or immunities by giving at least thirty (30) days prior written notice to the Parties. Such resignation shall take effect on the date specified in such notice or on the date thirty (30) days from the date it is received by all parties, whichever is later, unless a successor Escrow Agent shall have been sooner appointed, in which event such resignation shall take effect immediately upon the appointment of a successor Escrow Agent.

14. The Escrow Agent may be removed at any time by a written instrument or concurrent instruments signed by both Parties and delivered to the Escrow Agent.

15. If at any time hereafter the Escrow Agent resigns, is removed, or otherwise becomes incapable of acting, or the position of Escrow Agent shall become vacant for any other reason, the Parties hereto shall promptly appoint a successor Escrow Agent. Upon appointment, such successor Escrow Agent shall execute and deliver to his/her predecessor and to the Parties hereto an instrument in writing accepting such appointment. Thereupon, without further act, such successor Escrow Agent shall be fully vested with all the rights, immunities, and powers, and shall be subject to all the duties and obligations of his/her predecessor, and the predecessor Escrow Agent shall promptly deliver all books, records, and other property and monies held by him/her hereunder to such successor Escrow Agent.

## VII. Notices

16. All notices, certifications, authorizations, requests, or other communications required or permitted to be made under this Escrow Agreement shall be provided by email and delivered by hand, or by overnight courier, or by certified mail, postage prepaid, return receipt requested, as follows:

To the Attorney General's Office:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2642 (direct)
Nora.Chorover@state.ma.us

To Milford Stone:

Joseph F. Shay, Jr.
President
Milford Stone Company, Inc.
429 East Main Street
Milford, MA 01757

To the Escrow Agent:

Adam J. Brodsky, Esq.
Drohan, Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, MA 02043
781-749-7200
abrodsky@dtm-law.com

VIII. Miscellaneous

17. This Escrow Agreement may not be amended, altered, or modified except by written instrument executed by all parties hereto.
18. The Parties agree that DTM shall not be precluded from representing Milford Stone in this matter on account of its role as Escrow Agent.
19. In the event of any disagreement between Milford Stone and the Attorney General's Office, the Escrow Agent may retain the Escrow Funds in the Escrow Account pending written instructions mutually given by the Milford Stone and the Attorney General's Office, or at the Escrow Agent's discretion may deposit the funds with the United States District Court, District of Massachusetts and file an action of interpleader asking instructions from the Court as to whether the funds should be released and to whom.
20. This Agreement shall be governed by, construed in accordance with, and enforced under the laws of the Commonwealth of Massachusetts.

**IN WITNESS WHEREOF** the Parties have hereunto set their hands and seals this 19th day of November, 2019.

Witness: Office of the Attorney General

[signature] By: [signature]

Print Name: Meeghan Davoren

Milford Stone Company, Inc.

MILFORD STONE CO. INC
Print Name: JOSPH F SHAY JR

By: ______________________
Joseph F. Shay, Jr., President

Drohan Tocchio & Morgan P.C.

______________________
Print Name: Marjorie Monson

By: ______________________
Adam J. Brodsky, Esq.

# ATTACHMENT A TO ESCROW AGREEMENT

## CERTIFICATION OF EXPENDITURES
## AND
## REQUEST FOR AUTHORIZATION OF PAYMENT

1. This Certification is contemplated by the November 19, 2019 Escrow Agreement executed by the Commonwealth of Massachusetts, acting through the Office of the Attorney General ("Attorney General's Office") and Milford Stone Company, Inc. ("Milford Stone"), and it is intended to secure the release of funds contained in an Escrow Account established pursuant to the Escrow Agreement and paragraphs 12 of the Consent Decree in Commonwealth v. Milford Stone, [case #]. All terms used in this Certification shall have the same meaning as they have in the Escrow Agreement and the Consent Decree.
2. Milford Stone and/or its consultant(s) or contractor(s) has/have incurred costs necessary to comply with restoration and/or replication requirements set forth in paragraph 19 of the Consent Decree. These costs, in the amount of $________, were incurred on the following date(s) for performance of the tasks indicated:

| Date | Nature of work or services performed |
|---|---|
| | |
| | |
| | |
| | |

These costs are itemized in the **documentation attached hereto**.

3. These costs do not include any of the following: (a) taxes, fees, charges or other costs of administration of the Escrow Account; (b) fees, charges or costs related to services of the Escrow Agent; or (c) fees, charges, or costs related to services of attorneys.
4. I hereby certify that the actions for which the above-referenced costs were incurred were performed consistent with paragraph 19 of the Consent Decree, and consistent with applicable laws and regulations, including the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations. Accordingly, pursuant to paragraph 8 of the Escrow Agreement, the Attorney General's Office should authorize the Escrow Agent to present payment to Milford Stone in the amount specified:

| Payment to | Payment Amount |
|---|---|
| | |
| | |
| | |
| | |

In witness whereof, the undersigned has executed this Certification under the pains and penalties of perjury this ___ day of ___________, 20__.

______________________, individually
and as President of **Milford Stone Company, Inc.**

Sworn and subscribed before me this ___ day of __________, 20__.

___________________________________
Notary Public
My commission expires:

## ATTACHMENT B TO ESCROW AGREEMENT

## AUTHORIZATION OF PAYMENTS NECESSARY FOR COMPLIANCE WITH THE RESTORATION AND/OR REPLICATION REQUIREMENTS OF PARAGRAPH 19 OF CONSENT DECREE

1. I am a duly authorized Attorney employed in the Environmental Protection Division (or any successor division) of the Office of the Massachusetts Attorney General ("Attorney General's Office").This Certification is contemplated by the November 19, 2019 Escrow Agreement executed by the Commonwealth of Massachusetts, acting through the Office of the Attorney General ("Attorney General's Office") and Milford Stone Company, Inc. ("Milford Stone"), and it is intended to secure the release of funds contained in an Escrow Account established pursuant to the Escrow Agreement and paragraph 12 of the Consent Decree in Commonwealth v. Milford Stone, [case #]. All terms used in this Certification shall have the same meaning as they have in the Escrow Agreement and the Consent Decree.

2. Milford Stone and/or its contractor(s) or consultant(s) has/have incurred costs to comply with the restoration and/or replication requirements set forth in paragraph 19 of the Consent Decree. These costs, in the amount of $__________, are itemized in the documentation attached hereto (describing the nature of the work or services performed and the date(s) of performance). Pursuant to paragraph 8 of the Escrow Agreement, the Escrow Agent is hereby directed to present payment immediately of the Escrow Funds in the amount(s) indicated to the party(ies) designated below:

| **Payment to** | **Payment Amount** |
|---|---|
| | |
| | |
| | |
| | |

OFFICE OF THE ATTORNEY GENERAL

By:______________________________

Name:____________________________

Title:_____________________________

## ATTACHMENT C TO ESCROW AGREEMENT

### AUTHORIZATION OF RELEASE OF REMAINING FUNDS AND DIRECTIONS FOR PAYMENT

1. I am a duly authorized Attorney employed in the Environmental Protection Division (or any successor division) of the Office of the Massachusetts Attorney General ("Attorney General's Office").This Certification is contemplated by the November 19, 2019 Escrow Agreement executed by the Commonwealth of Massachusetts, acting through the Office of the Attorney General ("Attorney General's Office") and Milford Stone Company, Inc. ("Milford Stone"), and it is intended to secure the release of funds contained in an Escrow Account established pursuant to the Escrow Agreement and paragraph 12 of the Consent Decree in Commonwealth v. Milford Stone, [case number]. All terms used in this Certification shall have the same meaning as they have in the Escrow Agreement and the Consent Decree.

2. Pursuant to paragraph 9 of the Escrow Agreement, the Escrow Agent is hereby directed to present payment immediately of the remaining Escrow Funds to Milford Stone.

OFFICE OF THE ATTORNEY GENERAL

By:________________________________

Name:______________________________

Title:_______________________________